In the Matter of JOHN A. CIMAROSA, an Attorney, Respondent. WESTCHESTER COUNTY BAR ASSOCIATION, Petitioner.

Second Department, April 12, 1971.

■■■■■■■

234

*Alfred D. Fredericks* for petitioner.

*John A. Cimarosa,* respondent in person.

*Per Curiam.* The respondent was admitted to practice law on March 4, 1946 in the First Judicial Department. In this proceeding to discipline the respondent for professional misconduct, the petitioner moves to confirm the report of the Justice of the Supreme Court to whom the matter was referred for hearing and report; and the respondent by affidavit (which we treat as a cross motion) requests that that motion be denied with respect to paragraphs " 2 " and " 3 " of the report's findings and that the report be confirmed as to the remaining findings, " 1 ", " 4 " and " 5 ".

The petition charged the respondent with professional misconduct in that, despite repeated demands and requests that he return property entrusted to him by a client, he refused to do so. Specifically, the petition alleged the following acts: (1) in December, 1961 the respondent was retained by a client with respect to the estate of her deceased husband; (2) the estate consisted, among other property, of 285 shares of the common stock of American Telephone and Telegraph Company, 90 shares of the common stock of General Motors Company and " E " bonds of the United States of America of the value of $2,018.84; (3) for a period of more than eight years thereafter the respondent failed to return " E " bonds valued at $202.42 until after his appearance before the petitioner's Grievance Committee; (4) the respondent still retains 206 of the original 285 and 55 of the original 90 shares of the afore-mentioned corporate stock, respectively; and (5) although the respondent has paid sums equal to all dividends declared on such shares, he did so tardily and only after repeated demands and then not in the form of corporate dividend checks but from his personal funds.

In defense at the hearing the respondent contended, in effect, that his conduct was proper, but testified that he was " foolish " in his attempt to invest and reinvest his client's assets, allegedly with her consent; that all of the estate debts were paid from the proceeds of the sale of the " E " bonds, the balance of $202.42 remaining having been retained by him pending settlement of

the estate and the payment of the legal fee for his services; that the afore-mentioned stocks were received by him under a power of attorney executed by the client, which power had never been terminated; that all dividends due thereon had been paid to the client, with whom he had not had direct communication for several years and whose whereabouts were unknown to him; and that he was prepared to account and to turn over the stock to the client or to her authorized representative.

At the hearing, it was disclosed that the client, who is 80 years of age, was confined to her bed in a nursing home by reason of a heart condition, a fractured hip and blindness. It was further revealed at the hearing that the client's sister was in possession of a superseding power of attorney executed by the client to her.

Preliminarily, it may be noted that the power of attorney given to the respondent neither expressly nor impliedly authorized him to invest and reinvest the estate assets or to " play the market " in an active brokerage account such as the respondent maintained in the name of the deceased and that, although the sister testified that the purpose of the power of attorney was only to effect the reissuance of the securities in the client's own name, the respondent traded in the account until the end of 1962, when the account was closed.

The reporting Justice has made the following findings: (1) the charge that the respondent retained a portion of the securities entrusted to him and refused to return them to his client despite repeated demands and requests is not sustained; (2) the respondent should have returned all such securities at the time the brokerage account was closed and his failure to do so until the hearing constituted professional misconduct; (3) the respondent was remiss in not undertaking to ascertain the client's sister's status after September of 1968, at which time she had obtained a power of attorney from his client, instead of waiting until the hearing to satisfy himself that the sister had standing to complain of the respondent's conduct; (4) the respondent has been forthright and co-operative with the court and made no effort to conceal the issues and " readily admitted to the court that he had been foolish in attempting to handle the investments for the client "; and (5) all the securities involved have been accounted for and returned to the client.

In our opinion, all the charges were fully sustained by the proofs and, accordingly, the motions are disposed of as follows: the petitioner's motion to confirm is granted, except insofar as it concerns the finding numbered " 1 ", and we find, contrary to the report, the charge referred to in that finding to have been

sustained by the evidence adduced; and the respondent's cross motion is denied, except insofar as it concerns findings numbered "4" and "5".

In determining the measure of discipline to be imposed upon the respondent, we have taken into consideration his co-operation with the court and the fact that, prior to the conclusion of the hearing, he made full restitution to his client. We have also considered the public censure previously imposed upon the respondent by the Appellate Division, First Judicial Department (*Matter of Cimarosa*, 6 A D 2d 120), and it is our opinion that, under all the circumstances, the respondent should be suspended from the practice of law for a period of six months, commencing May 10, 1971.

RABIN, P. J., HOPKINS, MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Petitioner's motion granted, except as to finding "1"; respondent's cross motion granted as to findings "4" and "5" and otherwise denied; and respondent is found guilty of the matter set forth in findings "1", "2" and "3". Respondent is suspended from the practice of law for a period of six months, commencing May 10, 1971.